

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGE PAUL CHAMBERS,

    Plaintiff,

vs.

GENPACT LLC,

    Defendant.

Civil Action No.

**COMPLAINT**

## COMPLAINT

Plaintiff George Paul Chambers ("Plaintiff" or "Dr. Chambers"), by his attorneys, The Ottinger Firm, P.C., as and for his Complaint in this action against Genpact Ltd. ("Genpact" or "Defendant"), hereby alleges as follows:

### NATURE OF THE CLAIMS

1. This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendant's unlawful employment practices against Plaintiff, including Defendant's discriminatory treatment of Plaintiff due to his criminal history, in violation of the New York State Human Rights Law ("State HRL"), N.Y. Exec. Law § 296(15), New York City Human Rights Law ("City HRL"), N.Y. City Admin. Code § 8-107(10)(a).

2. Defendant's discriminatory and otherwise unlawful conduct was knowing, malicious, willful and wanton and/or showed a reckless disregard for Plaintiff, which has caused and continues to cause Plaintiff to suffer substantial economic and non-economic damages and severe mental anguish and emotional distress.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as Plaintiff is a resident of the state of Maryland, Defendant maintains a principal place of business in the state of New York, and the matter in controversy exceeds the sum of $75,000.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), because Defendant maintains a principal place of business and is subject to personal jurisdiction in this District, and because a substantial portion of the discriminatory actions that have given rise to Plaintiff's claims as alleged herein occurred in this District.

5. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

6. Defendant maintains a principal place of business in New York and is subject to personal jurisdiction in New York.

## THE PARTIES

7. Plaintiff George Paul Chambers is a resident of La Plata, Maryland. Dr. Chambers is a recognized expert in the field of data analysis.

8. Genpact LLC is a limited liability company organized under the laws of the state of Delaware and authorized to do business in New York, with corporate headquarters at 105 Madison Ave, New York, NY 10016, where it provides outsourcing and information technology services to clients around the world. At all relevant times, Genpact met the definition of "employer" under all applicable statutes.

# FACTUAL ALLEGATIONS

## I. Background

9. Dr. Chambers is a recognized expert in the field of data science. His professional experience includes employment as a supervisory research physicist for the Energetic Materials and Detonation Science Department of the Naval Surface Warfare Center and, prior to that as a research physicist with the Condensed Matter and Radiation Sciences Division of the Naval Research Laboratory in Washington, DC, as well as experience as a contractor at NASA.

10. In or around June 2002, Dr. Chambers was arrested as part of an FBI sting operation. Dr. Chambers maintained his innocence—as he continues to do—and asserted his right to a jury trial, which resulted in a hung jury in or around December 2002.

11. In or around March 2004, following a second jury trial, Dr. Chambers was convicted in the United States District Court for the District of Maryland of two counts: (i) use of an interstate commerce facility to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) and (ii) possession of child pornography, in violation of 18 U.S.C. §2252A(a)(5)(B), and was sentenced to a term of imprisonment of six years.

12. After serving four years of his six-year sentence, Dr. Chambers was released on probation in or around summer 2008.

13. Prior to his incarceration, Dr. Chambers began working with his sister to assist her with her business. Upon release from incarceration, Dr. Chambers again assisted his sister in running her business until 2009, when he began working as a contractor for NASA.

14. In 2010, Dr. Chambers decided to devote more of his time to his own start-up business working on the development of renewable energy sources, software development, and biotechnology applications.

3

15. Dr. Chambers's probationary period for his 2004 convictions ended on or around the beginning of 2011.

**II. Genpact Makes an Offer of Employment to Dr. Chambers**

16. On or around August 4, 2014, Mr. Michael Hurley, a third-party recruiter, contacted Dr. Chambers about a Data Analyst position with Genpact.

17. Dr. Chambers expressed interest in the position, believing it to be perfectly aligned with his qualifications, and Mr. Hurley quickly arranged for Dr. Chambers to interview with Genpact.

18. On or around August 12, 2014, Dr. Chambers was interviewed by Mr. Ashish Sharma, a senior manager at Genpact. That same day, Mr. Sulekha Banerjee, an analytics recruiter at Genpact, contacted Dr. Chambers via e-mail to schedule a second round of interviews the following day.

19. On or around August 13, 2014, Dr. Chambers was interviewed a second time by representatives of Genpact over the phone. On the following day, August 14, 2014, Mr. Banerjee contacted Dr. Chambers by email to schedule an in-person interview at Genpact's offices in New York City.

20. On or around August 18, 2014, Dr. Chambers travelled from his home in Maryland to New York City and was interviewed by Mr. Sharma, Mr. Milind Kelkar, a Vice President of Products and Solutions at Genpact, and Arindam Choudhury, a Genpact Vice President of Smart Decision Labs.

21. The Genpact representatives expressed extreme interest in Dr. Chambers's candidacy, because of his academic and professional qualifications, including management experience and substantive work in data analytics and computer programming.

22. On or around August 25, 2014, Genpact made an offer of employment to Dr. Chambers for the position of Senior Manager at an annual salary of $130,000.00. Dr. Chambers's duties as Senior Manager were to include conceptualizing and developing relevant predictive analytic solutions for Genpact's analytic clients.

23. Dr. Chambers's 2004 convictions had no relationship whatsoever to his prospective position as a Senior Manager, and his 2004 convictions do not imply that his employment with Genpact would pose any threat to public health or safety.

24. Genpact's offer to Dr. Chambers was made contingent upon completion of the Company's requisite drug test and background check. Dr. Chambers was given a start date of September 15, 2014.

25. On or around August 27, Dr. Chambers returned to Genpact a signed acceptance of the offer letter.

### III. Genpact Unlawfully Withdraws Its Offer To Dr. Chambers

26. Between August 28 and September 12, Genpact began taking administrative steps in anticipation of Dr. Chambers's employment, including processing payroll, verifying Dr. Chambers's employment, creating photo identification, and enrolling Dr. Chambers in Genpact's employee benefits programs.

27. On or around September 2, 2014, Dr. Chambers successfully completed his requisite drug test.

28. On or around September 3, 2014, Dr. Chambers completed Genpact's online application questionnaire. One of the questions asked: "Have you ever been convicted of a felony" and "If yes, explain." In response to this question, Dr. Chambers truthfully disclosed and explained his 2004 convictions.

29. On or around September 9, 2014, Genpact informed Dr. Chambers that the results of his background check and drug screening were all clear.

30. Notwithstanding this acceptance, on or around September 12, 2014, Ms. Preeti Patnaik, an HR representative at Genpact, contacted Dr. Chambers to inquire about the felony charges that he disclosed in the online application questionnaire.

31. Dr. Chambers explained to Ms. Patnaik the nature of the convictions and the fact that they were not only remote in time but would, in any case, have no relation to the position he would be taking at Genpact. Ms. Patnaik thanked Dr. Chambers for his honesty, but told him that she would have to speak to management, and that Genpact might rescind the offer of employment because of the convictions.

32. Later that day, Ms. Patnaik contacted Dr. Chambers by phone to inform him that the management team had elected to rescind the offer of employment from Genpact due to the convictions. That same day, by e-mail, Ms. Patnaik formally withdrew the offer made to Dr. Chambers on August 25, 2014.

## FIRST CAUSE OF ACTION
**(Unlawful discriminatory practices in violation of State HRL)**

33. Plaintiff hereby repeats and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

34. Defendant discriminated against Plaintiff on the basis of his criminal history by denying employment to Plaintiff by reason of his previous criminal convictions.

35. There is no direct relationship between Plaintiff's previous criminal offenses and the employment that Plaintiff sought with Defendant and the nature of Plaintiff's employment would not have involved an unreasonable risk to property or to the safety or welfare of specific individuals or the general public as required by N.Y. Correct. Law § 752, nor did Defendant take

into consideration any of the factors enumerated in N.Y. Correct. Law § 753 in withdrawing its offer of employment to Plaintiff.

36. As a direct and proximate result of Defendant's retaliatory conduct in violation of the State HRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, for which he is entitled to an award of damages.

37. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of State HRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self esteem and self confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

38. The discrimination detrimentally affected Plaintiff and the discrimination would have detrimentally affected a reasonable person in Plaintiff's position.

## SECOND CAUSE OF ACTION
**(Unlawful discriminatory practices in violation of City HRL)**

39. Plaintiff hereby repeats and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

40. Defendant discriminated against Plaintiff on the basis of his criminal history by denying employment to Plaintiff by reason of his previous criminal convictions.

41. There is no direct relationship between Plaintiff's previous criminal offenses and the employment that Plaintiff sought with Defendant, and the nature of Plaintiff's employment would not have involved an unreasonable risk to property or to the safety or welfare of specific individuals or the general public as required by N.Y. Correct. Law § 752, nor did Defendant take

into consideration any of the factors enumerated in N.Y. Correct. Law § 753 in withdrawing its offer of employment to Plaintiff.

42. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of City HRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self esteem and self confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

43. The discrimination detrimentally affected Plaintiff and the discrimination would have detrimentally affected a reasonable person in Plaintiff's position.

44. Defendant's unlawful discriminatory conduct constitutes a willful and wanton violation of City HRL, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violated the laws of the State and City of New York;

B. An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic hardship, including, but not limited to, the loss of past and future income, wages, compensation, and other benefits of employment;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and compensatory harm, including, but not limited to, compensation for his depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, harm to his personal and professional reputations and loss of career fulfillment;

E. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

F. An award of punitive damages;

G. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

H. Such other and further relief as the Court may deem just and proper.

Dated: October 10, 2014
New York, New York

Respectfully submitted,
THE OTTINGER FIRM, P.C.

By: _____
George D. Vallas
Robert Ottinger

401 Park Avenue South
New York, New York 10016
Telephone: (212) 571-2000
Fax: (212) 571-0505
george@ottingerlaw.com
robert@ottingerlaw.com

*ATTORNEYS FOR PLAINTIFF*